UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN O.,[1] | Case No.: 22cv1652-LR |
| Plaintiff, | **ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW** |
| v. | |
| MARTIN O'MALLEY,[2] Commissioner of Social Security | **[ECF No. 17]** |
| Defendant. | |

On October 25, 2022, Plaintiff Brian O. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner or Defendant") denying his application for a period of disability and disability benefits.  (See ECF No. 1.)  Now pending before the Court is the parties' Joint Motion for Judicial Review.  (See J. Mot. Judicial Review, ECF No. 17 ("J.

---

[1] In the interest of privacy, this Order uses only the first name and initial of the last name of the non-government party or parties in this case.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).

[2] Plaintiff named Kilolo Kijakazi, who was the Acting Commissioner of Social Security when he filed his Complaint on October 25, 2022, as a Defendant in this action.  (See ECF No. 1 at 1.)  Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

Mot.").)  For the reasons set forth below, the Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.      PROCEDURAL BACKGROUND

On June 3, 2016, Plaintiff filed his first application for a period of disability and disability insurance benefits, alleging disability beginning on October 17, 2015 ("First Application").  (See Certified Admin R. 340-41, ECF No. 12 ("AR").)  Although it appears that this application was denied initially on October 6, 2016 (see id. at 222), Plaintiff filed a protective application alleging the same disability onset date on January 24, 2019 ("Second Application").  (See AR at 340.)  Plaintiff's Second Application was denied initially (see id. at 168) and denied on reconsideration on September 30, 2019. (See id. at 174.)  On July 14, 2020, a hearing regarding Plaintiff's application was held before Administrative Law Judge ("ALJ") Michael Richardson.[3]  (See id. at 95-100.) During the hearing, the ALJ indicated that he had attempted to secure the testimony of an orthopedic medical expert ("ME"), but that he had been unable to do so by the time the hearing started.  (See id. at 95.)  Plaintiff's counsel agreed to a short continuance of the hearing.  (See id. at 96-97.)  On August 18, 2020, a continued hearing was held before the ALJ—during which both a ME and vocational expert ("VE") were also present.  (See id. at 56-92.)  On September 10, 2020, the ALJ determined that Plaintiff was not disabled between the alleged disability onset date of October 17, 2015 and his date last insured ("DLI") of December 31, 2018.  (See id. at 150.)

On April 12, 2021, the Appeals Council granted Plaintiff's request for review, vacating and remanding the ALJ's decision for the following reasons:

---

[3] Prior to the hearing, Plaintiff's counsel submitted a brief to the Social Security Administration's Office of Disability Adjudication and Review regarding Plaintiff's application for disability benefits.  (See AR at 457-64.)  In his brief, Plaintiff's counsel noted that although Plaintiff had submitted his First Application in June of 2016, neither Plaintiff nor his representative had ever received the notice of its denial from the agency.  (See id. at 457-46.)  Plaintiff's counsel therefore requested that the ALJ re-open Plaintiff's First Application, and the ALJ granted this request on July 13, 2020.  (See id. at 221.)

> The [ALJ] reopened an October 6, 2016 unfavorable initial determination on a claim for disability insurance benefits . . . [h]owever, the decision does not contain any rationale for reopening the determination . . . since the application date on this prior claim was June 2, 2016 [AR at 135], the decision should have included a weight analysis of the opinion evidence . . . The decision instead contains a persuasiveness analysis . . . [u]pon remand, the [ALJ] will further evaluate the opinion evidence and provide rationale for opening the determination on the prior claim.

(Id. at 159.)

The ALJ then held a remand hearing on August 19, 2021, during which Plaintiff was again represented by counsel. (See id. at 37-54.) During the remand hearing, Plaintiff's counsel agreed to withdraw his request to reopen Plaintiff's First Application, mooting the Appeals Council's remand order in part, (see id. at 39-40), and amended Plaintiff's alleged onset date to March 1, 2017. (See id. at 50-51.) Additionally, Plaintiff's counsel did not object to the use of testimony from both the ME and VE during the first hearing in the ALJ's new decision, obviating the need for any experts to testify during the remand hearing. (See id. at 43-44.) On September 22, 2021, the ALJ found that Plaintiff was not disabled between his amended alleged disability onset date of March 1, 2017 and his DLI of December 31, 2018. (See id. at 28.) On October 11, 2021, Plaintiff requested that the Appeals Council review the ALJ's decision on remand. (See id. at 338.)

On September 7, 2022, the Appeals Council denied Plaintiff's second request to review the ALJ's decision. (See id. at 1-4.) Plaintiff filed the instant civil action on October 25, 2022. (See Compl., ECF No. 1.)

## II.   THE SEQUENTIAL DISABILITY PROCESS

The initial burden of proof rests upon the claimant to establish disability. See Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet his burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by

22cv1652-LR

reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the first step of the five-step sequential evaluation process, the ALJ must determine if a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months; if not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); <u>see also</u> 20 C.F.R. §§ 404.1509, 416.909. At the third step, the ALJ must determine if the claimant's impairment(s) meets or equals that of a listed impairment; if so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the ALJ must determine whether, based on the claimant's residual functional capacity, the claimant can perform his or her past relevant work; if so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At the fifth step, the ALJ must determine whether, based on the claimant's residual functional capacity, age, education, and work experience, the claimant can make an adjustment to other work; if so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   SUMMARY OF THE ALJ'S FINDINGS

Before proceeding to the sequential disability analysis, the ALJ noted that Plaintiff's counsel did not have any objections to the use of testimony from the VE and ME during the first hearing, and that Plaintiff's counsel withdrew his request to reopen Plaintiff's First Application, mooting the order from the Appeals Council requiring him to articulate his reasons for reopening Plaintiff's First Application in part. (See AR at 15.) Additionally, the ALJ noted that Plaintiff's Second Application was protectively filed on January 23, 2019, with an amended alleged onset date of March 1, 2017, making

the revised rules for evaluating medical opinions applicable to his decision.  (See id. at 15.)

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2017 through December 31, 2018, his DLI.  (See id. at 17.)  At step two, the ALJ found that Plaintiff had the following impairments:

> multilevel degenerative disc disease, status-post discectomy; degenerative joint disease and osteoarthritis of the left shoulder; degenerative joint disease and osteoarthritis of the knees, status-post arthroscopy; degenerative joint disease and osteoarthritis of the hips; Achilles tendinopathy and rupture with bilateral debridement with reattachment, excisms, and calcaneal spurs; obesity; and opioid dependence.

(Id. at 17.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (See id. at 21.)  Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except: the individual could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; could sit for eight hours in an eight-hour workday; could stand and/or walk for two hours in an eight-hour workday; needed to use a cane for all ambulation; could occasionally perform overhead reaching with the left upper extremity; could frequently handle, finger, and feel with the left upper extremity; could not climb ladders, ropes, or scaffolds; could occasionally perform all other postural activities; and had to avoid concentrated exposure to extreme cold, extreme heat, vibrations, and hazards such as unprotected heights or dangerous moving machinery.

(Id. at 22-23.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would not be able to perform his past

work.  (See id. at 26-27.)  The ALJ then proceeded to step five of the sequential evaluation process.  (See id. at 27.)  Based on the VE's testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and was therefore not disabled. (See id. at 28.)

In determining that Plaintiff was not disabled prior to his DLI, the ALJ found unpersuasive—and as a practical matter rejected—the opinion of Plaintiff's pain management physician, Bradley Chesler, M.D., who concluded that Plaintiff did not have the residual functional capacity to sustain full-time work between the alleged onset date of his symptoms and his DLI.  (Id. at 26.)

## IV.    STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds.

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence means "more than a mere scintilla but less than a preponderance."  Id.  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions."  Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation omitted).  When evidence is "susceptible to more than one rational interpretation, one of which supports the ALJ's decision," the Court

must uphold the ALJ's conclusion.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels v. Berryhill, 874. F.3d 648, 654 (9th Cir. 2017) (internal quotation omitted).

Error in a social security determination is subject to a harmless-error analysis.  Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the ALJ's ultimate conclusion."  Molina, 674 F.3d at 1115 (internal quotation omitted).  The Court must "look at the record as a whole to determine whether the error alters the outcome of the case."  Id.  An error that is "inconsequential to the ultimate nondisability determination" is harmless.  Id. (internal quotation omitted).

## V.    DISPUTED ISSUES

As reflected in the parties' joint motion, Plaintiff contends that the ALJ committed three errors:

1.    The ALJ improperly evaluated the medical opinion evidence of Dr. Chesler. (J. Mot. at 6-7.)

2.    The ALJ improperly evaluated Plaintiff's subjective symptom testimony.  (J. Mot. at 21.)

3.    The ALJ failed to properly address whether Plaintiff can perform other work in significant numbers in the national economy at step five of the sequential evaluation process.  (J. Mot. at 26-30.)

## VI.    DISCUSSION

The ALJ found that Plaintiff was not disabled between his amended alleged onset date of March 1, 2017 and his DLI of December 31, 2018.  (See AR at 15.)  Plaintiff contends that the ALJ reached this decision erroneously based on each of the three challenges listed in Section V, supra.  As will be explained in further detail below, the Court concludes that the ALJ committed legal error in evaluating Dr. Chesler's opinion

and that remand for further development of the record is appropriate on this basis.

**A.    The ALJ's Evaluation of Dr. Chesler's Medical Opinion**

**1.    Relevant factual background**

Notes pertaining to Plaintiff's course of treatment with Dr. Chesler for pain management extend as far back as March of 2016 in the record, when Plaintiff received a referral related to chronic Achilles insertional tendinopathy, calcaneal spurs, and tendinitis.  (See AR at 1437.)  Dr. Chesler started Plaintiff on a pain management regiment, which included oxycodone, and saw Plaintiff for follow-up examinations and medication refills approximately every four weeks.  (See, e.g., id. at 1438 (noting follow-up appointment in four weeks).)  In addition to describing Plaintiff's pain and adjusting medication at monthly follow-up examinations, Dr. Chesler noted Plaintiff's symptoms related to his joint impairments and tracked some of the procedures that other physicians were using to correct them.  (See, e.g., id. at 751 (noting the use of a scooter after a surgical procedure).)  These notes also document Plaintiff's response to procedures, including a Achilles debridement surgery on Plaintiff's right foot in April of 2017 to address Plaintiff's heel spurs and Achilles tendon (see id. at 751; see also id. at 588), as well as a tendon procedure on Plaintiff's left leg in October of 2017 to address tendinosis and a Haglund prominence.  (See id. at 737; see also id. at 560.)  Although they are sometimes short in length and parts of the content in each note are copied from previous examinations, Dr. Chesler's notes document multiple instances of Plaintiff's response to surgeries, physical therapy, and other treatment methods.  (See, e.g., id. at 694-766 (documenting Plaintiff's pain symptoms through a discussion of Plaintiff's response to medication).)

Dr. Chesler completed a "Physical Medical Opinion" form on March 5, 2020, which described some of Plaintiff's impairments in the disability context.  (See AR at 979-83.)  Specifically, Dr. Chesler explained that he had seen Plaintiff monthly starting in March of 2016, and that his diagnoses of Plaintiff's impairments included chronic low back pain and cervical radiculopathy.  (See id. at 979.)  In the "symptoms" section of the

form, Dr. Chesler noted that Plaintiff had "lumbar and cervical pain with loss of endurance with poor sleep," and that Plaintiff experienced "severe low back pain which is . . . exacerbated by standing and sitting." (Id.)  The section identifying significant signs and laboratory findings related to these impairments includes "cervical MRI 4-579 C67 severe foraminal stenosis." (Id.)  In describing the treatment and response, including any side effects of prescribed medication, Dr. Chesler noted that "side effects of medicine include reduced alertness, constipation, and balance issues." (Id.)  Notably, Dr. Chesler opined that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, and checked a box identifying depression as a psychological condition affecting Plaintiff's physical condition.  (See id. at 979-80.)

As a result of Plaintiff's impairments, Dr. Chesler's medical opinion form explained that Plaintiff would be able to walk three city blocks without rest or severe pain; that Plaintiff would only be able to sit for fifteen minutes at one time before needing to get up; that Plaintiff would only be able to stand for fifteen minutes before needing to sit down; that he could sit and stand or walk for about two hours in an eight-hour workday; that he would need a job that permits him to shift positions at will from sitting, standing, or walking; that he would need to include periods of walking for five minutes at a time every thirty minutes during an eight hour workday; and that his pain would cause the need to take five-minute unscheduled breaks every hour during an eight hour workday.  (See id. at 980.)  Dr. Chesler noted that Plaintiff would not need to use a cane while engaging in occasional standing or walking, that Plaintiff would likely be off task for ten percent of an eight hour workday, and absent for more than four days a month due to his symptoms.  (See id. at 981-82.)  In explaining that Plaintiff's impairments were "reasonably consistent with the symptoms and functions limitations" described throughout the form, Dr. Chesler noted "severe multi-joint rheumatoid arthritis which is hereditary." (Id. at 982.)  Finally, in identifying the factors he considered in developing this opinion, Dr. Chesler checked boxes for "longitudinal perspective," noting a "[four] year history," "patient's complaints," "consistency of patient's complaints over time,"

and "patient's response to treatment." (Id.)  Dr. Chesler noted that the earliest date these limitations could have applied to Plaintiff was March of 2017.  (Id. at 983.)

The ALJ found Dr. Chesler's opinion about Plaintiff's limitation non-persuasive, reasoning as follows:

> Dr. [Chesler's] opinion is unpersuasive because it is inconsistent with and not supported by the objective medical evidence. Repeated testing for RF and ANA have been negative; and the claimant sought little to no mental health treatment through the date last insured, so Dr. Chesler's inclusion of these as contributing factors appears unsupported.  Dr. Chesler's opinion appears to rely more on the claimant's subjective reports rather than objective findings, and Dr. Chesler provided his opinion more than a year after the expiration of the claimant's date last insured, December 31, 2018.  Notably, the objective medical evidence also supports a limitation related to the use of an assistive device because the claimant's treatments indicate that he was using a cane through the date last insured while recovering from surgeries and working with physical therapy. Through the date last insured, the claimant's symptoms included neck pain, back pain, left upper extremity pain with numbness, and lower extremity pain.  While his symptoms certainly precluded the type of physically demanding work that he had done in the past (see below), these symptoms were stable enough with treatment, including pain medication and physical therapy, to allow for a range of sedentary work as described above.  In sum, the claimant's exertional limitations would not have precluded the performance of sedentary work with some additional limitations related to the use of an assistive device as well as manipulative limitations related to the use of his upper left extremity.

(Id. at 26.)

### 2. Applicable law

In evaluating the intensity and persistence of a claimant's symptoms, an ALJ must consider all the available evidence from the claimant's "medical sources and nonmedical sources about how [the claimant's] symptoms affect [her]."  20 C.F.R. § 404.1529(c)(1). Medical opinions are more persuasive if they are supported by explanations and objective

medical evidence, 20 C.F.R. § 404.1520c(c)(1), and if they are consistent with the evidence from other medical and nonmedical sources, id. § 404.1520c(c)(2). Furthermore, the medical opinion of a specialist "about medical issues related to his or her area of specialty" is more persuasive than that of a non-specialist.  Id. § 404.1520c(c)(4).  The purpose, length, and extent of a medical source's treatment relationship with the claimant, the kinds and extent of examinations and testing performed, and the frequency of the claimant's visits, may also demonstrate a medical source's knowledge and understanding of the claimant's impairments.  Id. § 404.1520c(c)(3)(i)-(v).  In addition, a medical source's familiarity with other evidence in a claim may make the source's opinion more persuasive.  Id. § 404.1520c(c)(5).

Revised regulations apply to an ALJ's analysis of medical opinion evidence for claims filed on or after March 17, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5867-68 (Jan. 18, 2017).  The Ninth Circuit has recognized that these new regulations upend the longstanding treating physician rule.  See Woods v. Kijakazi, 32 F.4th 785, 790-94 (9th Cir. 2022).  Under these new rules, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c(a).  The ALJ must instead consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors including supportability, consistency, relationship with the claimant, and specialization.  Id.  The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The ALJ *must* articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions . . . in [his or her] decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

Related to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be."  20 C.F.R.

22cv1652-LR

§§ 404.1520c(c), 416.920c(c)(2).  For consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.320c(c)(2).  The ALJ is not required to explain how they considered other factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical.  See 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

An ALJ's decision, "including the decision to discredit any medical opinion, must simply be supported by substantial evidence" under the new regulations.  Woods, 32 F.4th at 787; see also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023) (explaining that an ALJ must provide an explanation supported by substantial evidence, which articulates how they considered both supportability and consistency).  ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to conduct a meaningful review of whether that reasoning is supported by substantial evidence.  See Titus L. S. v. Saul, Case No. 2:20-cv-04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020)); see also Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); see also Treichler v. Comm'r of Soc. Sec. Admin, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  The Ninth Circuit has noted that ALJs should attempt to use these terms "with precision."  Woods, 32 F.4th at 793 n.4.

Although the revised rules provide new terms that an ALJ must use in evaluating medical opinion evidence, the new rules do not replace all previous caselaw within the Ninth Circuit.  For example, ALJs still may not cherry-pick evidence in discounting a medical opinion.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014); see also

Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing an ALJ's selective reliance "on some entries in [the claimants records while ignoring] the many others that indicated continued, serious impairment"). Nor, for instance, may the ALJ dismiss medical opinions without providing a detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. [They] must set forth [their] own interpretation and explain why they, rather than the doctors', are correct.

Regenmitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) (internal citation omitted).

### 3.   Analysis

Plaintiff's argument places a great deal of emphasis on medical evidence in the record that he contends reasonably supports Dr. Chesler's functional limitations assessment, demonstrating that the ALJ did not properly weigh the medical evidence in rejecting Dr. Chesler's opinion. (See J. Mot. at 6-17.) Additionally, although somewhat disorganized throughout his portion of the joint motion, Plaintiff also points to several examples of reasoning that the ALJ used to discount Dr. Chesler's opinion that he argues were legally insufficient. Namely, Plaintiff contends that: (1) a "negative rheumatoid arthritis and ANA test . . . are not necessarily determinative or particularly relevant if a claimant has also been diagnosed with either fibromyalgia or the multiple musculoskeletal impairments which affect and limit [Plaintiff]" (id. at 7:3-11); (2) Dr. Chesler noted Plaintiff's use of a cane multiple times throughout the record (see id. at 9:18-21); and (3) that Plaintiff's severe cervical spine test results shortly after his DLI were of such a magnitude that it was impossible for them to not have been disabling during the disability period. (See id. at 15:6-16.)

In response, Defendant contends that the ALJ properly discussed Dr. Chesler's

1   limitations assessment under the required supportability and consistency factors.  (See id.
2   at 18-19.)  Specifically, Defendant argues that the ALJ properly considered the
3   supportability factor by finding that Dr. Chesler relied more on Plaintiff's subjective
4   complaints rather than objective findings.  (See id. at 18:12-19:14.)  Pointing to
5   "essentially identical physical examination findings at each visit throughout the relevant
6   period," as well as reasoning by the medical expert during the administrative hearing that
7   such findings suggest Dr. Chesler never properly examined Plaintiff, Defendant contends
8   that the ALJ properly discussed the supportability factor in his decision.  (Id. at 18:18-19,
9   19:9-14.)  Additionally, Defendant contends that the ALJ properly analyzed Dr. Chesler's
10  limitations assessment under the consistency factor, pointing to instances where Plaintiff
11  reported relief from Dr. Chesler's treatment regiment and reported activities which
12  suggested that he was less impaired than Dr. Chesler's assessment suggests.  (See id. at
13  19:12-28.)

14          Although the parties' briefs are somewhat divergent as to which parts of the ALJ's
15  discussion are the most important, the Court concludes that the reasons presented in the
16  ALJ's decision for disregarding Dr. Chesler's opinion were not supported by substantial
17  evidence such that meaningful review can be conducted of his findings.  As an initial
18  matter, the Court notes that the ALJ's discussion of Dr. Chesler's opinion conflates the
19  supportability and consistency factors such that the Court cannot clearly determine which
20  parts of the decision correspond to each factor.  (See, e.g., AR at 26 ("Dr. [Chesler's]
21  opinion is unpersuasive because it is inconsistent with and not supported by the objective
22  medical evidence.").)  Apart from one sentence in which the ALJ found that Dr.
23  Chesler's discussion of rheumatoid arthritis and depression as contributing factors to
24  Plaintiff's impairments were "unsupported" (see id.), the ALJ did not explain in any
25  meaningful fashion how he considered the supportability and consistency of Dr.
26  Chesler's findings as separate criteria.  Courts within the Ninth Circuit have concluded
27  that conflating the supportability and consistency factors, which ALJs are required to
28  analyze under the new regulations, renders the analysis of a medical opinion insufficient.

See, e.g., Lisa Ann M. v. Kijakazi, Case No. 2:23-cv-01081-MAA, 2024 WL 39193, at *3 (C.D. Cal. Jan. 3, 2024) ("Supportability and consistency are terms of art and are not interchangeable.") (internal quotations and citation omitted); E.S. v. Kijakazi, Case No. 20-cv-06550-JCS, 2022 WL 4292333, at *33 (N.D. Cal. Sept. 16, 2022) (noting that the ALJ conflated the supportability and consistency factors under the new regulations because the ALJ failed to articulate which evidence supported the findings regarding each factor; see also 20 C.F.R. § 404.1520c(b)(2) (ALJs must "explain how [they] considered the supportability and consistency factors" when determining how persuasive they find a medical opinion)).  While the Court recognizes that it is sometimes possible to deduce which parts of the ALJ's analysis supports each factor depending on whether the ALJ compared the medical opinion to the source's own treatment notes and examination findings (see 20 C.F.R. § 404.1520c(c)(1) (supportability)) or other evidence in the record (see 20 C.F.R. § 404.1520c(c)(2) (consistency)), the ALJ's decision here—at best—leaves the categorization of each of these factors to the Court's interpretation.  Cf. Woods, 32 F.4th at 793 n.4 ("to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision.").  Although the Court will nevertheless endeavor to analyze the ALJ's discussion of each factor, as will be explained in more detail below, this lack of clarity as to which evidence supported the findings regarding each discrete factor only serves to highlight the overall deficiencies in the ALJ's discussion of Dr. Chesler's opinion.

After categorizing each piece of record evidence cited by the ALJ in finding Dr. Chesler's opinion unpersuasive, the Court concludes that this part of the ALJ's finding was not supported by substantial evidence.  With respect to the supportability factor, the ALJ provided no explanation whatsoever for the finding that Dr. Chesler's opinion "was based more on [Plaintiff's] subjective reports rather than objective findings."  (AR at 26.)  While An ALJ may reject a doctor's opinion if it is based in large part on a claimant's subjective reports that are properly discounted, see Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), here, the record demonstrates that Dr. Chesler saw Plaintiff on a

monthly basis for four years, and based many of his findings on his own examinations of Plaintiff's conditions.  See, e.g., (AR at 979 (noting monthly contact since 2016); 982 (noting that the opinion was based on both Plaintiff's subjective complaints *and* Dr. Chesler's own treatment of Plaintiff)); Rios v. O'Malley, Case No. 1:22-cv-01164-HBK, 2024 WL 280602, at *6 (E.D. Cal. Jan. 25, 2024) ("the ALJ provides no explanation for the finding that Dr. Kurpiers' opinion is based 'almost exclusively' on Plaintiff's self-reports.").

Defendant argues that the ALJ's reasoning about Dr. Chesler's opinion is "well supported because although Dr. Chesler conducted physical examinations of Plaintiff and saw Plaintiff at least monthly, his examination findings were essentially identical" for each medical visit.  (J. Mot. at 18.)   Pointing to the ME's testimony that identical examination notes by a particular doctor throughout the longitudinal record suggest a patient did not actually receive a detailed physical examination, Defendant contends that these abnormalities support the ALJ's finding that Dr. Chesler's opinion was based heavily on Plaintiff's subjective reports.  (See id. at 19:8-14.)   While the agency medical expert's reasoning during the hearing could certainly support the ALJ's findings with respect to Dr. Chesler's reliance on Plaintiff's subjective complaints, the problem with this argument is that it is not presented anywhere in the ALJ's decision.  See Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [its own] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."); Suzi Marie H. v. O'Malley, Case No.: 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *8 (S.D. Cal. Mar. 5, 2024) (quoting Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)) ("'We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings'").

Additionally, the fact that Dr. Chesler "provided his opinion more than a year after the expiration of [Plaintiff's] [DLI]," without any further explanation from the ALJ as to why this undercuts the supportability of the opinion, is not reasoning that is supported by

substantial evidence.  Dr. Chesler specifically indicated that the impairments he assessed in his opinion form existed since March of 2017, (see AR at 983) and that he based his opinion on his four-year treatment history with Plaintiff, including treatment during Plaintiff's alleged disability period.  (See id. at 979.)  Without any further discussion as to why the retrospective nature of the opinion affected its persuasiveness, this reasoning was also insufficient to reject Dr. Chesler's limitations assessment.  See, e.g., Svaldi v. Berryhill, 720 F. App'x 342, 343-44 (9th Cir. 2017) (where medical opinions "refer back" to the same chronic condition and symptoms discussed in a physician's opinion from several years prior, the "fact that those opinions were issued significantly after Svaldi's DLI does not undercut the weight those opinions are due").  The ALJ accordingly failed to properly articulate the supportability factor with regard to Dr. Chesler's opinion.  Remand is therefore warranted on this issue.

Regarding the consistency factor, many of the reasons comparing Dr. Chesler's opinion to other evidence in the record were similarly unsupported by substantial evidence.  In an apparent response to the part of Dr. Chesler's opinion form that noted Plaintiff would not need to use a cane to stand or walk, the ALJ explained that "the objective medical evidence also supports a limitation related to the use of an assistive device because [Plaintiff's] treatment records indicate that he was using a cane through the date last insured while recovering from surgeries and working with physical therapy." (AR at 26.)  Apart from failing to cite any records to support this comparison,[4] the ALJ ignored multiple instances in the record where Dr. Chesler noted Plaintiff's use of a cane

---

[4] It is possible that the ALJ intended to cast doubt on the supportability of Dr. Chesler's opinion by pointing to the discrepancy between his own treatment records, which note Plaintiff presenting with a cane following surgeries, and his medical opinion form that did not assess the need for Plaintiff to use a assistive device for standing and walking.  Without any specific record citations, or indeed any reasoning to explain whether the ALJ was examining such evidence under the supportability or consistency factors, the Court declines to interpret the ALJ's decision to include such reasoning.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

and assistive devices throughout the alleged disability period.  (<u>See, e.g.</u>, AR at 753 (treatment note from March 20, 2017 explaining that Plaintiff "is using a cane."); 751 (treatment note from April 17, 2017 explaining that Plaintiff "is using a scooter" after surgery); 749 (treatment note from May 15, 2017 explaining that Plaintiff was using a walking boot to help with ambulation); 737 (October 30, 2017 note explaining that Plaintiff was using a scooter to walk); 735 (November 27, 2017 note explaining that Plaintiff was using a cane to walk); 732 (December 19, 2017 note explaining that Plaintiff was weightbearing with a cane because of his heel pain).)  The ALJ was not permitted to point out only the portions of the medical evidence that bolstered his conclusion, while ignoring multiple instances in the record of Dr. Chesler explaining that Plaintiff needed an assistive device to walk during the alleged disability period.  <u>See, e.g.</u>, <u>Napel v. Berryhill</u>, No. CV 17–3857–PLA, 2018 WL 1737546, at *9 (C.D. Cal. Apr. 9, 2018) (citing <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1205 (9th Cir. 2001) ("the ALJ in this case 'pointed' only to the portions of the medical records that bolstered his findings . . . the Court cannot conclude that under the circumstances here the reasons for the weight given to [the doctor's] opinions . . . were specific and legitimate and supported by substantial evidence.").  This reliance on one page of Dr. Chesler's opinion in the face of a record with multiple references to the use of Plaintiff's cane during the relevant period was not a reason supported by substantial evidence.

Nor were the ALJ's references to Plaintiff's symptoms being "stable enough with treatment, including pain medication and physical therapy," sufficient reasons to find Dr. Chesler's opinion unpersuasive under the consistency factor.  (<u>See</u> AR at 26.)  Defendant points to several instances in the record where Plaintiff reported (1) his pain medications "providing 70 to 80 percent relief from his pain" (J. Mot. at 19:19-21 (citing AR at 665, 669, 677, 729, 735)), (2) "working with physical therapy" (<u>id.</u> at 19:22-23 (citing AR at 540)), and (3) leaving on a road trip to Flagstaff, Arizona, "suggesting that Plaintiff could sit for more than the 2 hours a day opined by Dr. Chesler."  (<u>Id.</u> at 27-28 (citing AR at 713).)  While the ALJ incorporates a cursory reference to his discussion of Plaintiff's

subjective symptom testimony earlier in his decision, none of these reasons were substantively discussed by the ALJ in rejecting Dr. Chesler's opinion.  (See AR at 26 ("While his symptoms certainly precluded the type of physically demanding work he had done in the past (see below), these symptoms were stable enough with treatment, including pain medication and physical therapy, to allow for a range of sedentary work as described above."); see also Tina L. R. v. Kijakazi, Case No. CV 21-3586 PVC, 2022 WL 6632198, at *5 (C.D. Cal. July 25, 2022) (concluding that while the ALJ may have made findings about a doctor's treatment records "in reviewing the overall record," the citations did not sufficiently connect to the ALJ's supportability analysis) (internal quotations omitted).

Even if the ALJ had used the citations to Plaintiff's symptoms being "stable enough with treatment" elsewhere in the record to support his findings, these were not sufficient reasons supported by substantial evidence to reject Dr. Chesler's opinion. Elsewhere in the ALJ's decision, he briefly summarized two treatment notes by Dr. Chesler in October and December of 2018, noting that Plaintiff's "symptoms were stable with his treatment program" (AR at 23 (citing AR at 665)), and that Plaintiff was "tolerating a reduction in his pain medication dosage."  (Id. (citing AR at 698).) Additionally, the ALJ noted that Plaintiff was "weight bearing with a cane and working with physical therapy."  (Id. (citing AR at 540).)  Contrary to Defendant's analysis, the treatment notes by Dr. Chesler cited earlier in the ALJ's decision are two instances of Plaintiff reporting stability and tolerating reduction in pain medication among dozens of similar notes from Plaintiff's monthly visits with Dr. Chesler.  While some records do reflect adjustments in the dosage of Plaintiff's pain medication and that Plaintiff reported relief in some instances, other treatment notes explain that Plaintiff's pain was increasing, particularly around the times of his surgical procedures.  (See, e.g. AR at 724 (March 19, 2018 note explaining that Plaintiff's pain had "flared up" that month); 716 (June 16, 2018 note explaining that Plaintiff had increased right hip pain, and that he needed to receive the same prescription as a previous visit to function); 735 (noting flare-up of pain

following surgery on left foot).)  The ALJ's passing citation to two instances of improvement or "stability with treatment," without taking into account the larger record of Plaintiff's treatment with Dr. Chesler was not a reason to discount Dr. Chesler's opinion that was supported by substantial evidence.[5]  See Gregory T. v. Saul, No. 1:19-cv-03116-MKD, 2020 WL 4730966, at *5 (E.D. Wash. May 12, 2020) (quoting Ghanim v. Colvin, 763 F.3d 1154, 1161-62 (9th Cir. 2014) ("observations of improvement must be 'read into the context of the overall diagnostic picture' of an individual, and improvement in some symptoms does not indicate nondisability . . .  the ALJ is not permitted to 'cherry pick' from mixed evidence to support a denial of benefits.").  Indeed, further explanations in several of Dr. Chesler's more detailed treatment notes suggest that the improvement Plaintiff reported may have only been a discussion of the instantaneous relief that Plaintiff felt after taking a dose of his prescribed pain medication.  (See, e.g., AR at 1389 (May 2019 note explaining that "the relief that the medication provides is 70-80% . . . the duration of the effect of the medication is 4-5 hours.").

Similarly, the ALJ's single citation to Plaintiff "working with physical therapy" (AR at 23 (citing id. at 540)), does not present an accurate picture of how effective that treatment was in contrast to Dr. Chesler's opined limitations.  Other treatment records from the same healthcare provider as the one cited in the ALJ's decision note that Plaintiff had attempted physical therapy between foot surgeries, but that he reported it to be ineffective due to his pain.  (See, e.g., AR at 558 ("attempts at PT but difficulty given the pain.").)  These reasons were not sufficient to reject Dr. Chesler's opinion.  See, e.g., Buethe v. Comm'r of Soc. Sec., No. 2:20-cv-552-KJN, 2021 WL 1966202, at *7 (E.D. Cal. May 17, 2021) ("the text of the regulations explicitly require an explanation of how

---

[5] Yet again, it is unclear to the Court whether the ALJ intended to use these findings by Dr. Chesler under the supportability or consistency factor.  Even if the ALJ did intend to include these citations in his discussion of the supportability factor, because they were not supported by substantial evidence in the first place, they cannot rescue the deficiencies in the ALJ's discussion of that factor.

the ALJ considered the supportability and consistency of an opinion . . . there is no room for ignoring significant portions of the record").

Finally, the ALJ rejected Dr. Chesler's opinion with regard to its consistency because "repeated testing for RF and ANA have been negative; and the claimant sought little to no mental health treatment through the date last insured, so Dr. Chesler's inclusion of these as contributing factors appears unsupported."[6]  (AR at 26.)  It is unclear to the Court at the outset how antibody testing for rheumatoid arthritis is relevant to Dr. Chesler's opinions about Plaintiff's limitations due to pain.  Dr. Chesler diagnosed Plaintiff with "chronic lower back pain" and "cervical radiculopathy," and assessed limitations due to those conditions, only noting that Plaintiff's symptoms were *consistent* with rheumatoid arthritis, rather than listing that condition as a contributing factor to Plaintiff's pain.  (See id. at 982.)  Additionally, the record reflects that Dr. Chesler diagnosed Plaintiff with depression in January of 2020.  (See id. at 1138.)  As Dr. Chesler completed the medical opinion statement in March of 2020, it follows that Plaintiff's depression could have been listed as an instantaneous contributing factor, rather than one that was intended to apply precisely to the disability period at issue in this appeal.  Even if these reasons provided by the ALJ were sufficient to address the consistency factor, however, the ALJ's errors with respect to the supportability factor—explained above— render the ALJ's reasoning insufficient to reject Dr. Chesler's opinion.

In sum, the ALJ's failure to properly address the persuasiveness of Dr. Chesler's opinion under the required supportability and consistency factors pursuant to the regulations was error.  Even if the Court could determine which evidence was discussed in relation to each discrete factor, the reasons provided by the ALJ to find Dr. Chesler's

---

[6] "A positive ANA test signifies an autoimmune reaction, which could indicate 'lupus, rheumatoid arthritis or scleroderma.'"  Nieves v. Comm'r of Soc. Sec., 23-CV-5 (JGLC) (BCM), 2024 WL 992197, at *2 n. 2 (S.D.N.Y. Feb. 20, 2024).  Furthermore, rheumatoid factors ("RF") are "proteins produced by the immune system that, when present at high levels, can indicate rheumatoid arthritis."  Timothy P. v. Saul, Case No. 19-cv-03976-EMC, 2020 WL 3972590, at *6 n. 13 (N.D. Cal. July 14, 2020).

opinion unpersuasive were not supported by substantial evidence.  Furthermore, because this error impacts the ALJ's RFC finding, it is not harmless.  See, e.g., Slate v. O'Malley, Case No. 1:23-cv-00092-SKO, 2024 WL 967661, at *8 (E.D. Cal. Mar. 6, 2024) ("it is unlikely the ALJ's error was 'inconsequential,' as medical opinion evidence may have [affected] the ALJ's RFC, as well as the testimony of the VE.").  The Court, however, "expresses no opinion on the level of persuasiveness that should be ascribed to" Dr. Chesler's opinion, "[n]or does the undersigned express what plaintiff's RFC should ultimately be.  These are for the ALJ to decide."  Buethe, 2021 WL 1966202, at *7.  Remand is accordingly warranted for the ALJ to reconsider Dr. Chesler's opinion.

**B.**   **Additional Assignments of Error**

In addition to the argument that the ALJ did not properly address the medical opinion evidence discussed above, Plaintiff contends that the ALJ erred by improperly discounting his subjective symptom testimony and did not properly address whether he can perform other work in significant numbers in the national economy at step five of the sequential evaluation process.  (See J. Mot. at 21; 26.)  Because the assessment of Plaintiff's symptom claims, and his findings at step five would be at least partially dependent on the reevaluation of Dr. Chesler's opinion, the Court declines to address these additional assignments of error here.  See, e.g., Morales v. Kijakazi, Case No. 1:20-cv-00572-BAK, 2022 WL 970774, at *7 (E.D. Cal. Mar. 31, 2022) ("Because the ALJ's assessment of Plaintiff's symptom claims, and the finding at steps four and five are at least partially dependent on the ALJ's reevaluation of medical evidence, including the examining opinions of Dr. Michiel and Dr. Van Kirk, as discussed above, the Court declines to address these challenges in detail here."); Benjamin S. v. Kijakazi, Case No. 1:21-cv-00414-CWD, 2022 WL 16948759, at *7 (D. Idaho Nov. 15, 2022) (declining to reach the plaintiff's subjective symptom testimony when the ALJ's analysis was affected by the failure to properly consider medical opinion evidence).

## VII.   REMAND

A reviewing court has discretion to remand an action for further proceedings or for

a finding of disability and an award of benefits.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985) (decision of whether to remand for further proceedings or remand for immediate payment of benefits is within the discretion of the reviewing court).  Whether an action is remanded for further proceedings or for an award of benefits depends on the likely utility of additional proceedings.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  In determining whether an award of benefits is warranted, the Court conducts the "three-part credit-as-true" analysis.  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  Under this analysis the Court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceeding would serve no useful purpose; and (3) if the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled on remand.  See Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015).

Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"  Garrison, 759 F.3d at 1021.  "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act.  Dominguez, 808 F.3d at 407 (quoting Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotations omitted)).  The first requirement is met here based on the ALJ's harmful legal errors.  As discussed above, the ALJ erred in evaluating Dr. Chesler's opinion.

As for the second requirement, the Ninth Circuit has held that remanding for further proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities."  Treichler, 775 F.3d at 1101 (internal quotations and citations omitted).  "When the ALJ denies benefits and the court finds error, the court ordinarily

must remand to the agency for further proceedings before directing an award of benefits." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2018) (citing id. at 1099).  Where the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate.  See Revels, 874 F.3d 648, 668 (9th Cir. 2017); McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).  The Court concludes that additional administrative proceedings could provide clarification on the reasoning attendant in the ALJ's decision in this case, making the immediate award of benefits inappropriate.  Although the ALJ failed to set out reasons supported by substantial evidence to find Dr. Chesler's opinion unpersuasive, additional administrative proceedings could cure these deficiencies.  (See, e.g., AR at 69-70 (discussing discrepancies in Dr. Chesler's opinion); see also Leon, 880 F.3d at 1045 ("the ALJ's failure to provide sufficient reasoning despite a fully developed record, without any conflicts, gaps, or ambiguities, does not automatically result in a determination that the claimant is therefore credible and should be awarded benefits immediately.").  Accordingly, this case should be remanded for further administrative proceedings to allow for proper consideration of the evidence of record.  See, e.g., Rios, 2024 WL 280602, at * 6 (concluding that additional administrative proceedings would be useful when the ALJ improperly considered the medical opinion evidence, which was an essential factual issue that needed to be resolved before benefits could be awarded).

## VIII.  CONCLUSION

For the reasons set forth above, the Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  March 28, 2024

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

24